734 So.2d 206 (1999)
Edward Miles LONG, Appellant,
v.
Kathryn Tim LONG, Appellee.
No. 97-CA-01047COA.
Court of Appeals of Mississippi.
January 26, 1999.
*207 John W. Christopher, Ridgeland, Attorney for Appellant.
Robert W. Long, Canton, Attorney for Appellee.
BEFORE McMILLIN, P.J., COLEMAN, AND PAYNE, JJ.
McMILLIN, P.J., for the Court:
¶ 1. In this appeal, Edward Long asks this Court to review various aspects of the chancellor's decision regarding financial matters in the dissolution of his twenty-eight year marriage to Kathryn Long. Dr. Long urges that the chancellor abused his discretion when he failed to give due weight to certain factors adversely affecting his future ability to generate income. He also argues that, when viewed in the aggregate, the chancellor's financial awards to Mrs. Long were so unduly generous as to constitute a manifest abuse of discretion. We disagree and affirm the judgment of the chancellor.

I.

Facts
¶ 2. Dr. and Mrs. Long were married December 1966 in Iowa and relocated shortly thereafter to Mississippi, where Dr. Long began an apparently successful career as a chiropractor. Mrs. Long worked in Dr. Long's clinic from time to time in various capacities, but was not otherwise employed outside the home. She involved herself in the day-to-day activities of raising three children, all of whom were emancipated at the time this proceeding was begun.
¶ 3. Mrs. Long filed for divorce in 1994 and was granted a judgment of divorce in 1995 on the ground of uncondoned adultery. The chancellor, after enlisting the assistance of an outside expert to appraise the various marital assets, determined the total value of the marital property to be $591,235, subject only to an outstanding bank indebtedness of $101,000. The chancellor suggested that the facts warranted an equal division of the marital property and proceeded to set out to Mrs. Long property having a value of $295,617.50. He reduced that share, however, by $50,500, representing one-half of the bank indebtedness. He ordered Dr. Long to pay the entire bank debt. Thus, the actual net distribution of marital assets to Mrs. Long was $245,117.50, which was accomplished by giving her an automobile valued at $15,000, crediting Dr. Long with a $20,000 advance paid under a temporary features order, giving Mrs. Long sole title to the home and contents having a combined value of $132,465, and ordering Dr. Long to pay an additional sum of $77,652.50, to be paid in installments with interest.
¶ 4. In addition to this division of marital assets, the chancellor ordered Dr. Long to pay lump sum alimony in the amount of $20,000 and awarded Mrs. Long periodic alimony in the amount of $2,000 per month. Mrs. Long had testified that her anticipated normal monthly expenses were $3,123 per month, a figure which the chancellor specifically found to be reasonable.
¶ 5. Dr. Long has appealed. He does not attack the granting of the divorce itself, but confines himself to an attack on the various financial awards given to Mrs. Long as constituting an abuse of discretion.

*208 II.

The First Issue: The Division of Assets was Inequitable
¶ 6. Dr. Long points to evidence that he suffers from health problems, including sleep apnea, chronic back pain, and high blood pressure. He argues that the chancellor should have considered these matters when making a division of marital assets. We do not find these health-related issues to be of overwhelming significance in the matter of equitable division of previously accumulated assets. The health and earning capacity of the paying spouse is one of the enumerated factors more properly given substantial weight when the court considers future periodic alimony payments. Brabham v. Brabham, 226 Miss. 165, 176, 84 So.2d 147, 153 (1955). The criteria to be considered when making an equitable division of existing assets are set out in Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). Only if Dr. Long had shown that the chancellor's division substantially prejudiced his "need for financial security" because of his diminished earning capacity would it appear that an issue of abuse of discretion might exist. Id. The proof in this case does not suggest such a finding. Dr. Long appears, based on any reasonable analysis of this record, financially secure for the present and for the foreseeable future.
¶ 7. Alternatively, Dr. Long urges that the method of division of the marital assets was unfair because it saddled him with all of the marital debt. The chancellor is vested with substantial discretion in making such determinations. Davis v. Davis, 638 So.2d 1288, 1292 (Miss. 1994). In placing responsibility for all of the family debt on Dr. Long, the chancellor clearly took into account that he was, and had been throughout the term of the marriage, the sole income producer and his income had serviced the family's debt during the marriage. Mrs. Long had never, throughout this extended marriage, worked outside the home earning any substantial sums of money, and there was no evidence that she had any reasonable prospect of entering the workforce at a salary level that would permit her to make a substantial monthly debt payment. The chancellor tempered the impact of his decision by reducing those marital assets set apart to Mrs. Long in an amount equal to one-half the outstanding debt. Thus, though Dr. Long was required to pay what might seem to be, at least in an equitable sense, Mrs. Long's share of the family debt, he was permitted to retain a disproportionate share of the marital assets having a value equal to the extra debt charged to him. That resolution of the matter does not, in our view, constitute an abuse of the wide discretion given the chancellor in such matters. To the contrary, we find it an entirely equitable method of dealing with the debt.
¶ 8. Dr. Long also suggests that the chancellor abused his discretion in deciding to effect an equal division of marital assets. Dr. Long argues that this was an arbitrary decision unaccompanied by consideration of the various factors that must be weighed in reaching the decision as set out in the Ferguson decision. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994). The Hemsley v. Hemsley decision, handed down the same day as Ferguson, suggests that the starting point for analysis is the assumption "for divorce purposes that the contributions and efforts of the marital partners, whether economic, domestic or otherwise are of equal value." Hemsley v. Hemsley, 639 So.2d 909, 915 (Miss.1994). The "[d]irect or indirect economic contribution to the acquisition of the property..." is the lead-off factor for consideration in equitable division under Ferguson. We find nothing in the evidence that would suggest that this factor or any other relevant Ferguson factor so weighed against an even division of the assets accumulated during this marriage that Dr. Long has been inequitably deprived of property that ought to have been set off to him. We *209 decline to find error in the chancellor's division of marital assets.
¶ 9. Dr. Long further suggests that the lump sum alimony award of $20,000 and the periodic award of $2,000 per month, when considered together, were so unduly generous to Mrs. Long as to constitute an abuse of discretion. He points again to evidence that he has health problems that could, in the future, adversely affect his income-producing abilities. Those problems include chronic back pain and sleep apnea. The sleep apnea, according to the proof, prevents Dr. Long from driving a car and requires him to be chauffeured in pursuit of his various business activities. There is no evidence, however, that either difficulty has had a present adverse impact on his earning abilities. To the contrary, his professional endeavors appear to be thriving, except for an ill-fated joint venture in Tupelo which the chancellor properly disregarded as valueless in making his financial decisions. Dr. Long also specifically argues that the chancellor improperly discounted Mrs. Long's potential, but largely unproven, income-producing capabilities when setting alimony.
¶ 10. All of these factors are proper things for the chancellor to consider when making decisions as to alimony. Creekmore v. Creekmore, 651 So.2d 513, 517 (Miss.1995); Parsons v. Parsons, 678 So.2d 701, 703 (Miss.1996). Nevertheless, we are unconvinced that the chancellor either disregarded these factors or failed to give them the proper weight. As we have already observed, Dr. Long's health difficulties have not decreased his present earning abilities and there was no reasonable means in the evidence for the chancellor to project some future decline in earnings based on the proof. As to the periodic alimony, Dr. Long will, of course, always have the remedy of a subsequent modification petition based on changed circumstances if his worst fears about his health come to pass.
¶ 11. Neither do we think the chancellor improperly discounted Mrs. Long's earning potential. He found her anticipated expenses of $3,123 per month to be reasonable, yet only awarded her $2,000 per month in periodic alimony. The bulk of the assets set apart to her in equitable division, such as the house and contents, were not capable of producing income. The amounts that were more liquid could reasonably be viewed as providing a suitable reserve for retirement and unexpected expenses, based on Mrs. Long's age of fifty-nine years. Those funds could not reasonably be expected to produce sufficient investment income to meet Mrs. Long's monthly shortfall between income and expenses and would soon be exhausted if they had to be expended for that purpose. Thus, it appears to the satisfaction of this Court that the chancellor did, in fact, contemplate the need for Mrs. Long to enter the work force if she desired to maintain the lifestyle reflected in her itemization of her expenses.
¶ 12. When considering a marriage of this duration, during all of which Dr. Long was the sole income provider while Mrs. Long made other equally valuable contributions to the family, we do not think the chancellor abused his discretion in fashioning the various monetary awards to Mrs. Long. When viewed in the aggregate, taking into account both Mrs. Long's needs and Dr. Long's right to live comfortably, the financial awards do not appear so generous in Mrs. Long's favor as to suggest an abuse of discretion. Dr. Long's demonstrated lack of funds to live as comfortably as he might wish appears to be based on discretionary debts incurred solely by him after the deterioration of his marriage to Mrs. Long. That is a factor that the chancellor may disregard without violating any known principle of equity.
¶ 13. The chancellor has wide discretion in making those necessary decisions to wind up the financial aspects of a marriage of long duration. Tillman v. Tillman, 716 So.2d 1090, 1094 (Miss.1998). *210 The chancellor must consider, when properly petitioned, at least three forms of relief (equitable distribution, lump sum alimony, and periodic alimony). Each of those potential awards is governed by a number of factors the chancellor must weigh, some of which are inevitably in conflict with others. Even at that point, the chancellor's work is not finished, since he must then consider the financial package in its entirety to ensure that the overall result is equitable to both parties. Id. Because of the wide discretion enjoyed by the chancellor, our limited role in the event of an appeal is to discover those instances where we are convinced that the chancellor has abused his discretion. It is our view that no such abuse has occurred in this case.
¶ 14. THE JUDGMENT OF THE MADISON COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
BRIDGES, C.J., THOMAS, P.J., COLEMAN, DIAZ, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.
IRVING, AND LEE, JJ., NOT PARTICIPATING.